WILLIAM A. NEWELL vs. A. L. WILLISTON & others.

Hampshire.    Sept. 18, 1884. — Jan. 20, 1885.    C. ALLEN & COLBURN, JJ.,
absent.

A., the owner of certain shares of the stock of a manufacturing corporation, deliv-
ered the certificate of the shares to B., for the purpose of transferring the stock
to B. as collateral security for the payment of a debt.   The printed blank on
the back of the certificate was signed by A., but was not filled up.   The cer-
tificate contained the following provision, which was prescribed by a by-law of
the corporation: "Transferable only on the books of the company, in person
or by power of attorney, on surrender of this certificate."   B. wrote to the cor-
poration, notifying it that he held the certificate, and requesting that the stock
be transferred to him on the books of the corporation.   The clerk of the corpo-
ration wrote on the stub from which the certificate was cut as follows: " Memo.
Held by B.   See letter."   And the letter was pinned to the stub.   The corpora-
tion had no book in which it recorded transfers of stock, but was accustomed
to keep memoranda of attachments and the like on the stubs from which cer-
tificates had been taken.   Subsequently C. caused these shares to be attached
on a writ against A., with knowledge of the above-named memorandum and
letter.   Afterwards B. filled up the blank on the certificate and sent it to the
corporation, demanding that the transfer be recorded and a new certificate
issued, which demand was refused on account of the attachment.   *Held*, on a
bill in equity, that, under the Pub. Sts. *c*. 106, § 30, and *c*. 105, § 24, C. was en-
titled to hold the stock as against B.

BILL IN EQUITY, filed March 8, 1884, against A. L. Willis-
ton, the Mill River Button Company, a corporation established
by law in this Commonwealth, and H. W. Knight.   Hearing in
the Superior Court, before *Knowlton*, J., who reported the case
for the determination of this court, in substance as follows:

On or about August 24, 1882, the defendant Knight, who was
a resident of New York city, being then the owner of seventy-
five shares of the capital stock of the defendant corporation,
delivered in that city to the plaintiff, who was also a resident
there, two certificates of said stock, one for fifty and another for
twenty-five shares, and, in the presence of an attesting witness,
placed his signature upon the back of each, under a blank printed
thereon, designed to be used in transferring said stock and to
be filled up as an assignment and a power of attorney to make
the transfer.   This delivery was made for the purpose of trans-
ferring said stock to the plaintiff as collateral security for a
promissory note given the same day for borrowed money.   It

was understood that the plaintiff might at any time fill up the blanks and obtain new certificates if he desired. The certificates contained the following: " Transferable only on the books of the company, in person or by power of attorney, on surrender of this certificate."

A by-law of the corporation prescribed the form of the certificates, and required that they should contain the provision regarding transfers which appears therein.

The defendant corporation was a manufacturing corporation, governed by the provisions of the Pub. Sts. *c.* 106.

On April 10, 1883, the defendant Williston caused said stock to be attached upon a writ against the defendant Knight, which was never entered; and on April 27 he caused it to be again attached upon a similar writ, which was entered. The defendant in that suit was defaulted, and the case stands continued for judgment.

On February 14, 1883, the plaintiff sent to the president of the defendant corporation a letter notifying him that he held the certificates, and requesting that the stock be transferred to him on the books of the corporation. This letter was soon after pinned to the stub, from which one of said certificates was taken, in the stock-book of the defendant corporation, and was shown to the officer at the time of the first attachment. After the first, and before the second of said attachments, the clerk of said corporation wrote upon each of the stubs from which said certificates were cut these words: " Memo. Held by W. A. Newell. See letter." The letter has remained pinned to the stub in said book ever since. The corporation had no book in which it recorded transfers of stocks, but was accustomed to keep memoranda of attachments and the like upon the stubs from which certificates had been taken. At the time of the first attachment, the defendant Williston had no actual knowledge or notice of the pledging of this stock, although he had good reason to suspect that the defendant Knight had raised money upon it. On April 12, 1883, the officer who made said attachment wrote to the attorney who acted for Williston in making the writs and ordering the attachments, informing him of the notice, sent by the plaintiff to the corporation, of the assignment of the stock to the plaintiff.

On April 20 or 21, 1883, the plaintiff went to the office of said corporation in Leeds, in the town of Northampton, but found none of its officers there. He had some conversation with a clerk whom he found there, but what it was did not appear. Afterwards, on the same day, he met one Warner, the treasurer of said corporation, at the depot in Northampton, and told him that he had been to Leeds to have the stock transferred, and to receive new certificates in exchange for them, and that they had refused on account of the attachment. Warner said there had been an attachment, and they could not issue new certificates in place of the old ones. Nothing else was done by the plaintiff or by the corporation towards perfecting the plaintiff's title until about March 3, 1884, when the plaintiff's attorney filled the blanks over the signatures of Knight upon said certificates and sent a letter to the defendant corporation enclosing the certificates, and demanding that the transfers be recorded and new certificates issued. The corporation refused the request, on account of the attachment. The plaintiff also gave the defendant Williston, more than ten days before bringing this suit, a just and true account of the amount due him for which said stock was pledged, and demanded payment of said amount, which was refused.

Until about February 1, 1883, the plaintiff supposed he had good and valid transfers of said stock without filling the blanks, and without taking new certificates or having the assignments recorded.

Upon these facts, the judge ruled that the bill should be dismissed, with costs. If the ruling was warranted in law and equity, a decree was to be entered in accordance with it; otherwise, such other decree as equity might require.

*W. G. Bassett*, for the plaintiff.

*M. F. Dickinson, Jr.*, (*J. C. Hammond* with him,) for the defendant Williston.

W. ALLEN, J. The Pub. Sts. c. 106, § 30, provided, in regard to manufacturing corporations, that "shares may be transferred by the proprietor by an instrument in writing under his hand, which shall be recorded by the clerk in a book to be kept for that purpose," and that the purchaser named in the instrument so recorded shall be entitled to a new certificate on surrendering

the old one. The Pub. Sts. *c.* 105, § 24, provided, that "no sale, assignment, or transfer of stock in a corporation shall affect the right of the corporation to pay any dividend due upon the same, or affect the title or rights of an attaching creditor, until it is recorded upon the books of the corporation or a new certificate is issued to the person to whom it has been transferred."

The memorandum with the letter attached was clearly no record of an assignment of the stock. No instrument was presented to be recorded, nor any request made by the plaintiff that any instrument should be recorded; and there was no intention or attempt on the part of the officers of the corporation to record any. All the parties apparently intended to rely upon the issuing of the new certificate, and not upon an instrument of assignment, for the transfer of the legal title to the stock, and understood that the instrument could not be perfected by filling the blanks until it should be used as a power of attorney to obtain a new certificate, in accordance with the by-law and the statement on the face of the certificate that a transfer could be made only on the books of the company, in person or by power of attorney, on surrender of the certificate.

Besides, there was no instrument which could be recorded. An assignment, to be recorded, must be an instrument sufficient to pass the legal title. The incomplete instrument which the plaintiff held may have given him an equitable interest in the stock, and the right to complete the instrument and perfect the title; but it was not a legal assignment, and, if spread upon the record, would not be the record of a "sale, assignment, or transfer" of the stock, or operate to transfer it. *Boyd* v. *Rockport Steam Cotton Mills*, 7 Gray, 406. *Johnson* v. *Somerville Dyeing & Bleaching Co.* 15 Gray, 216.

The plaintiff contends that the attaching creditor had such notice of the plaintiff's right that he cannot set up the want of a recorded assignment. The statute is express, that no sale or assignment shall affect the rights of an attaching creditor until recorded; that is, until an instrument of assignment is recorded. The attaching creditor, in this case, had knowledge of the memorandum and letter, and had such notice only as can be inferred from that knowledge. If this affected him with notice

of the facts and of the plaintiff's rights, he knew that there had been no transfer of the stock, and no record of an assignment, that there was no assignment which could be recorded, and that the plaintiff had no right unless that of an equitable assignee, with power to make a legal assignment and transfer. The statute says that these things shall not affect the rights of an attaching creditor, and, by plain intendment, makes it immaterial whether he knows of them or not. It gives him the same right as to stock thus situated that he would have as to other kinds of personal property which had been sold by a contract good between the parties, but without delivery.

*Bill dismissed.*