## GHIO *v.* BYRNE.

Opinion delivered June 16, 1894.

1. *Mortgage—Negligence of clerk in filing—Texas law.*
   Where, under the statute of Texas (Sayles' Civ. Stat. art. 3190 b) requiring chattel mortgages to be filed but not recorded, a chattel mortgage is filed, and the clerk improperly recorded it, and returned the original to the trustee, who at once sent it back to be properly registered, the default of the clerk will not

enure to the detriment of the mortgagee in favor of one who purchased the mortgaged property after the first and before the second filing.

2. *Constructive notice—Recitals in bill of sale.*

A recital in a bill of sale to the effect that the sale is made subject to a certain mortgage is constructive notice of the mortgage, though it is unrecorded, and the vendee takes subject to the mortgage.

3. *Mortgage not filed—Effect of actual notice.*

One who purchases chattels in Texas with actual notice of a prior mortgage not properly filed takes subject thereto.

4. *Chattel mortgage—Effect of giving mortgagor power to sell.*

If a mortgage of articles of merchandise left in possession of the mortgagor with power to sell and account to the mortgagee for the proceeds is void under the laws of Texas, such a mortgage is valid as to other property included therein and not intended to be sold by the mortgagor.

5. *Texas law—Right of mortgagee to sue for conversion.*

In Texas a mortgagee may sue for conversion of the mortgaged property.

Appeal from Miller Circuit Court.

RUFUS D. HEARN, Judge.

Action by L. A. Byrne, as trustee, and the Gate City National Bank against A. L. Ghio. The facts are stated by the court as follows:

This is an action by appellees, against the appellant, instituted in the Miller circuit court on the 18th day of November, 1890, in which the plaintiffs claim damages against defendant for the unlawful taking and conversion of certain personal property named in the complaint, alleged to be of the value of five thousand dollars, and for which sum they ask judgment.

One Ernest Zucchini, a saloon keeper in the city of Texarkana, Texas, being indebted to the plaintiff, the Gate City National Bank, in the sum of eleven hundred, eighty-one and 59-100 dollars, as evidenced by his promissory note, to secure the payment of the same, executed, acknowledged and delivered his certain deed of trust to

plaintiff L. A. Byrne, as trustee, wherein, for that purpose, he sold and conveyed to said trustee the following property, to-wit : "His entire bar and saloon fixtures and outfit, located in the Ghio corner building, on Broad and State streets, in Texarkana, Texas, consisting mainly of the following items: All the bar and lunch counters, looking glasses, billiard and pool tables, all glass and bar ware, all office chairs, all gas fixtures, tables, iron safe, cooking apparatus, and all property of every character or kind in said building. Also all his entire stock of wines, whiskies, brandies, and all other spirits located in said building." It was provided in said deed of trust that, upon the execution and delivery of the same, the possession of all of the said property was to be absolutely given to said trustee by said Zucchini for the purpose aforesaid, Zucchini being then in possession of the same. It was further provided in said deed of trust that "the said Ernest Zucchini is by the said L. A. Byrne appointed as special agent, and for the following purposes only: that is, he shall be permitted to make sales of the stock of goods above set forth, and conduct the daily sales thereof, but with the express and unqualified understanding that all daily receipts arising from said business shall be by said Zucchini deposited in the Gate City Bank of Texarkana, Arkansas, for the satisfaction of the debt and obligation hereinafter set forth ; and this condition shall be strictly pursued without regard to the maturity of the debt, until the same is fully satisfied." In other respects, this deed of trust is substantially as such instruments of writing usually are. This deed of trust was immediately delivered by Byrne to the recorder for registration, and was filed and recorded, and the original returned to Byrne, who sent it back at once to the recorder, calling his attention to the error in the manner of registration, when

the error was corrected, and the instrument properly registered.

The defendant in his answer disclaims all knowledge of the execution and delivery of plaintiff's said deed of trust and note; denies that plaintiff trustee took possession as alleged in his complaint, or that the property was deliverrd to him or his co-plaintiff by said Zucchini for the purposes of said trust, or for any other purpose. He denies that he took possession without right. Defendant alleges that the property was, and continued to be, in Bowie county, Texas; and that the same consisted of a stock of *goods, wares and merchandise;* and that the same continued to be *exposed to daily sale* in course of business by the mortgagor, the said Zucchini, who was then a resident of Bowie county, Texas, and was in active and exclusive possession and control of said business for his own use and benefit; and that, on the 5th day of November, 1890, (after plaintiffs' mortgage was filed the first time and before it was filed the second time), Zucchini, for a valuable consideration, sold, conveyed and delivered to defendant all of said property, and put him (defendant) in possession of same, and that he has since owned the same; that the consideration of said sale and purchase was the payment of a valid and substantial indebtedness due from Zucchini to defendant, exceeding in amount the value of said property.

Defendant further alleges that the laws of the State of Texas provide as follows (Sayles' Civ. St., art. 3190 b.):

"Sec. 1. Every chattel mortgage, deed of trust, or other instrument of writing intended to operate as a mortgage of or a lien upon personal property, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the property mortgaged or pledged by such instrument, shall be absolutely void as against the creditors of the

mortgagor or person making same, and as against sub-
sequent purchasers and mortgagees or lien holders in
good faith, unless such instrument or a true copy of
same shall be forthwith deposited with and filed in the
office of the county clerk of the county where the prop-
erty shall then be situated, or if the mortgagor or per-
son making the same be a resident of this State, then
the county of which he shall at the time be a resident."

"Sec. 2.  Upon the receipt of any such instrument
the clerk shall endorse on the back thereof the time
of receiving it, and shall file the same in his office,
to be kept there for the inspection of all persons inter-
ested; provided that if a copy be presented to the
clerk for filing instead of the original instrument, he
shall carefully compare such copy with the original and
the same shall not be so filed, unless it is a true copy
thereof; and a copy can be so filed only when the origi-
nal has been acknowledged."

"Sec. 4.  The county clerk shall keep a book in
which shall be entered a minute of all such instru-
ments which shall be ruled off into separate columns
with heads as follows:  Time of Reception; Name of
Mortgagor; Name of Trustee or Mortgagee and *Cestui
Que Trust;* Date of the Instrument; Amount secured;
When due; Property Mortgaged and Remarks; and
the proper entry shall be made under each of such
heads.  Under the head of property mortgaged it will
be sufficient to enter a general description of the prop-
erty pledged and the particular place where located,
and an index shall be kept in the manner as required
for other records."

And the defendant alleges that none of the require-
ments of said laws have ever been complied with, and
therefore said deed of trust was and is absolutely void
as against this defendant.

Defendant further alleges that the laws of Texas. provide as follows, to-wit :

Art. 65 r. "Every mortgage, deed of trust, or other form of lien attempted to be given by the owner of any stock of goods, wares or merchandise daily exposed to sale in parcels in the regular course of business of such merchandise, and contemplating a continuance of possession of said goods and control of said business by sale of said goods by said owner, shall be deemed fraud-- ulent and void."

The case was tried by the court, sitting as a jury, upon the deed of trust and note and evidences of wit- nesses on the part of plaintiffs, and the bill of sale and evidence of witnesses on the part of defendant, and upon the agreement that the property was worth $5000.

The bill of sale from E. Zucchini to A. L. Ghio is. in words and figures following:

"The State of Texas, Bowie County. Know all men by these presents, that I, Ernest Zucchini, of the county and State aforesaid, for the consideration herein-- after stated, have this day sold and delivered to A. L. Ghio, of Bowie county, all my stock of liquors, goods, wares and merchandise ; also all of the bar fixtures, gas fixtures, mirrors, two billiard tables, all office fur- niture, iron safe, ice chest, etc., now situated in the brick building on lot 12 in block No. 28, Texarkana, Texas. The said stock of liquors, goods, wares and merchandise and other articles are to be promptly in- voiced, each and every article at its original cost, and the consideration to be paid by said A. L. Ghio for said stock of goods, wares and merchandise, is eighty per cent. on each dollar invoice value of goods, and the said total amount paid and to be paid is as follows: Said A. L. Ghio is to receipt me for fifteen hundred and forty-six dollars, which I am now owing him, and the said A. L. Ghio assumes and agrees to pay L. C. De

Morse thirty-seven hundred and fifty ($3750) dollars, evidenced by five (5) promissory notes as follows: One for $1000; one for $1500; one for $1000, and two for $125 each; and to assume and pay two of my notes held by the Texarkana National Bank, one for $250, and one for $200, endorsed by L. C. De Morse and John Mayher, with interest and costs on same. Said Ghio also assumes and agrees to pay A. P. Ghio the sum of $500, which I owe him. Also one note for $600, now in the Gate City National Bank, endorsed by L. C. De Morse and A. L. Ghio. This sale is made subject to a mortgage lien now subsisting on the above described property, in favor of the Gate City National Bank, for the sum of eleven hundred and eighty-one dollars.

Witness my hand this 5th day of November, 1890.

ERNEST ZUCCHINI.

Witness : { H. C. Hynson,
            { L. C. DeMorse.

The possession of Byrne consisted in the stipulation in the deed of trust, and the immediate delivery to him by Zucchini of one of the front door keys—the only one had at the time—and an effort to procure the others from clerks and other employees who happened to be away at the time, the house having been closed on account of a pending election. Byrne had directed the book-keeper of the bank, Mr. John Ousley, to go to the saloon morning and evening, and receive the proceeds of the sales of the night and day previously, which he did in the morning of the 5th November, and inquired for the night clerk, but found that he was not on watch. He returned that evening, and found defendant Ghio in possession. On that day the saloon had been open and business transacted as usual, and the bar-keepers state that they delivered the receipts to Zucchini, and had never heard of any change until Ghio took possession on the evening of the 5th of November immediately after Ghio had purchased

from Zucchini at 5 o'clock; and it appeared in evidence that appellees' mortgage was at this time on file for record, but not yet recorded. It seems from his statement that Ghio had formerly owned the property, or perhaps an interest in it, and a part of the consideration of his purchase was the satisfaction of the balance of the purchase money thus due him from Zucchini.

It is evident from the foregoing abstract that the controversy between the parties to this suit turns upon the solution of the question which of the two has the superior title, and the solution is to be arrived at mainly by determining the effect which the peculiar statutes of Texas have upon the evidences of title; and, finally, as to the right of action in the plaintiffs.

The court below sustained plaintiffs' right of action and deed of trust, and rendered judgment accordingly.

*Scott & Jones* and *C. S. Todd* for appellant.

1. The facts in this case did not constitute actual possession by Byrne, the trustee. The appointment of a clerk of the mortgagor as agent of the mortgagee, for the purpose of taking care of and selling the goods, when there is no announcement of a change in business, no change of books, and no change whatever, so far as the acts of ownership are concerned, is not a change of possession sufficient to constitute a mortgagee's lien. Jones, Ch. Mort. 181 and cases cited, 185, 186, 187; 39 Ark. 325; 41 *id.* 186; 44 *id.* 310; 46 *id.* 123. A mortgage of merchandise left in the possession of the mortgagor with power to sell in the ordinary course of business is void except between the parties to it, but, as to other property not to be sold by the mortgagor, is good. Arkansas cases *supra.*

2. There was no proof of any statute of Texas defining the rights of a vendor under a sale reserving the legal title and therefore these rights are to be deter-

mined by the common law.   51 Ark. 459 ; 50 *id*. 237 ; 42; *id*. 503.   Independently of statute, the sale of a chattel reserving the legal title, vests no title in the purchaser, and, upon his failure to pay, the vendor may recover the property, or treat the sale as valid, and sue for purchase price.   The possession of the vendee is only *prima facie* evidence of title, and even a *bona fide* purchaser acquires no title against the original vendor.   47 Ark. 363 ; 48 *id*. 160 ; 49 *id*. 63 ; 54 *id*. 476 ; 118 U. S. 663.

3.   Appellant and Zucchini were citizens of Texas, and the property was in Texas.   Appellee was a citizen of Arkansas.   The *lex situs* governs as to the validity of the deed of trust.   Jones, Ch. Mortg. 305 ; 7 Wall. 139, 150 ; 58 N. H. 88.

4.   In Texas a mortgagee is not the owner, but has only an equity and right of foreclosure, and until after foreclosure he has no right of possession.   2 Sayles, Tex. Civ. St. Art. 1822 *et seq* ; 12 Tex. 43 ; *Ib*. 47 ; 22 *id*. 338 ; 27 Tex. 471 ; 57 *id*. 91 ; 60 *id*. 298.

5.   Conceding that Ghio was not a purchaser in good faith without notice, and was not protected by the act April 22, 1879, still the mortgage was absolutely void, under sec. 17, act March 24, 1879, it being a mortgage on "a stock of merchandise daily exposed to sale in parcels," and there being no actual, visible and notorious change of possession, the mortgagor still retaining and exercising ownership and control, and carrying on the business as usual.   63 Tex. 506 ; *Ib*. 645, 511, 648–9.

6.   Appellant is not estopped by the clause in the bill of sale mentioning the deed of trust.   It did not admit the validity of the mortgage.   But the mortgage was *absolutely void and against public policy*, and no admission could validate it.   65 Tex. 79 ; 41 Ark. 331. No one is estopped by an act which is illegal and void.

See, also, Herman, Estop. p. 962; 39 Ind. 95; 34 N. Y. 50, 656.

7. Should the court hold the mortgage valid as to the furniture and fixtures, then, we submit, there is absolutely no evidence from which the court can ascertain the value of the furniture and fixtures.

*L. A. Byrne* for appellee.

1. Appellee had possession. It was given him by *the terms* of the deed of trust, and in addition the key of the front door was delivered, and he was asked to take charge, which he did, and appointed an agent to look after the business and see that the sales were deposited in bank under the terms in the deed of trust. This was delivery of possession under the Texas law. 57 Tex. 91; Jones on Ch. Mortg. sec. 429, 430.

2. The act of Texas, art. 632 (statutes of Texas), is nothing more than the enactment of the rule which obtains in this State, as announced in 39 Ark. 325; 41 *id.* 186; 46 *id.* 122. See 63 Tex. 506 in line with our decisions; also 63 *id.* 645.

3. There was nothing due Ghio from Zucchini, the purchase money having all been paid, and acknowledged.

4. The mortgage was properly recorded, under the laws of Texas. All that is required of a party is to *file* his instrument. He is not prejudiced by omission or errors of the clerk. 70 Tex. 118; 51 *id.* 91; 28 *id.* 605; Wade on Notice, secs. 162–3 *et seq.*

5. In Texas a mortgage may sue for a conversion of the property, or for trespass upon it. 60 Tex. 298; 82 *id.* 436; Jones, Ch. Mortg. secs. 446, 447, 447*a*, 452.

6. No one who has not a lien by process of law is a creditor and entitled to protection under the laws of Texas. 67 Tex. 657; 45 *id.* 522. One who purchases at a voluntary sale from his debtor and pays no money, but simply credits his debt, or who assumes the payment

of a debt to a third party without the knowledge or consent of such third party, is not a *bona fide* purchaser for value. Authorities cited.

7. Appellant is estopped by the recital in his bill of sale. 48 Ark. 258; Jones, Ch. Mortg. sec. 494, and authorities cited.

8. There was proof of the value of the furniture and fixtures, and the court found that they were worth at least $2500. The mortgage was at least valid as to them. 39 Ark. 325; 55 *id.* 77.

1. Negligence of clerk in registering mortgage.

BUNN, C. J. (after stating the facts.) In *Brothers* v. *Mundell*, 60 Tex. 240, to which we have been referred by appellant's counsel, the Supreme Court of Texas, in construing the statute of that State noted in the statement of this case, providing for the registration of chattel mortgages, held that such a mortgage, filed for record and recorded, furnishes no notice to third parties, since the statute requires the instrument in such a case to be filed, abstracted in the appropriate book, and kept on file for the inspection of all concerned. Such is the settled law of that State, and, besides being conclusive on or as being the construction put upon one of its statutes by its highest court of judicature, it is the only construction of which the statute admits, if we are permitted to say as much.

Upon the application of this law to the facts of this case, namely, that the deed of trust of appellees, by mistake of the clerk and recorder, was not properly filed and abstracted until after appellant's bill of sale was delivered and recorded, and appellant had taken possession of the property involved, he bases one of his contentions, that is to say, that his purchase is superior to the mortgage of appellees. We do not think this contention can be sustained, for several reasons, among which are the following: It is quite generally settled that where no duty with reference to the act of the reg-

istration is imposed by law upon the holder of a mortgage except to deliver the same to the proper officer for that purpose, no default of the registering officer is to be made to inure to the detriment of the beneficiary in the mortgage. *Throckmorton* v. *Price*, 28 Tex. 605; Wade on Notice, sections 152–162, and authorities cited; *Case* v. *Hargadine*, 43 Ark. 144; *Weise* v. *Barker*, 2 Pac. Rep. 919; *Mims* v. *Mims*, 35 Ala. 23; *Merrick* v. *Wallace*, 16 Ill. 486. In this case, no duty in this respect was imposed by law upon Byrne. No fault is attributed to him, and he delivered the instrument to the proper officer in due time to precede the purchase of Ghio, and the mistake was solely that of the recorder in not inspecting the instrument and from its character determining the place and manner of its registration, as the law directs.

Again, the bill of sale of appellant contains a recital to the effect that the sale to him and his purchase from Zucchini, Byrne's mortgagor, were made subject to the mortgage to Byrne. This kind of notice is now generally held to be constructive notice, such as devolves upon the holder of the instrument containing it the duty of following up the information thus furnished by proper inquiry, as in other cases where the duty of inquiry is imposed. *Gaines* v. *Summers*, 50 Ark. 322, and authorities cited; Wade on Notice, sections 307–309, and authorities cited. *Frye* v. *Partridge*, 82 Ill. 267; *Corbitt* v. *Clenny*, 52 Ala. 480; *Peto* v. *Hammond*, 30 Beav. 495.

<div style="float:right; font-size:smaller">2. Recitals of bill of sale as constructive notice of unrecorded mortgage.</div>

Not only do the authorities make such to be constructive notice, but there is another reason why appellant in this case must be held bound by the recital in his bill of sale. That recital is a condition upon which the sale was made to him. That appellant should accept the muniment of his title with that condition was a part of the consideration accruing to Zucchini, his vendor. Appellant accepted the property on that condition. He

ought not to hold on to the fruits of his purchase and yet be unwilling to observe its conditions. He should abandon his purchase *in toto*, or stand by all its terms. The plea that, the mortgage of Byrne being invalid, Ghio was not bound to observe the recital of its existence in his bill of sale is not well founded, for the reason that a failure to register at all does not render a mortgage invalid. The act of registration is for the benefit of persons in the situation of appellant, in this : that it furnishes them notice of the existence of prior inconsistent claims to their own. In this case, had there been no registration, and nothing in lieu thereof, still the appellant was affected with notice otherwise of this mortgage, and that is all the benefit that registration could have afforded him.

3. Effect in Texas of actual notice of unfiled mortgage.

There is still another reason why this contention of appellant cannot be sustained. It is this : In our argument heretofore we have given the appellant the benefit of the rule which governs in this State, that is to say, that the registration of a mortgage is the only notice by which persons other than parties to the mortgage can be affected ; that third parties are not bound by actual notice of the existence of an unrecorded mortgage ; for such is the rule here. *Main* v. *Alexander*, 9 Ark. 112 ; *Jacoway* v. *Gault*, 20 Ark. 190 ; *Hannah* v. *Carrington*, 18 Ark. 105 ; and the later decisions of this court on the subject. The rule grows out of the peculiar language of our statute giving effect to the registration of mortgages and similar instruments, which, taken from Mansfield's Digest, is as follows, to-wit : " Sec. 4743. Every mortgage, whether for real or personal property, shall be a lien on the mortgaged property from the time the same is filed in the recorder's office for record, and not before ; which filing shall be notice to all persons of the existence of such mortgage." The preceding

section provides that all mortgages shall be proved or acknowledged in the same manner as deeds are proved or acknowledged, and, when so proved or acknowledged, shall be recorded, if for lands, in the county where they are situated, and, if for personal property, in the county where the mortgagor resides. It is evident, that one dealing with property, under this peculiar statute, cannot be affected by actual notice, simply because constructive notice of record is made the only notice effectual in such cases. Now our statute giving effect to the registration of deeds and other absolute conveyances, digested in Mansfield's Digest as section 671, as affects the argument, is almost in the language of the section of the Texas statute, to which we have referred in our statement of the case, which gives effect to the registration of chattel mortgages such as that we have under consideration. The construction given to this, our statute, is that constructive notice of registration is not the only notice by which a purchaser may be affected ; for, if he have actual notice of the existence of an unrecorded deed, he is bound by it. *Byers* v. *Engles*, 16 Ark. 543 ; *Sisk* v. *Almon*, 34 Ark. 391.

The Texas statute on the subject does not, in our opinion, confine the holder of a chattel mortgage to the benefits of the notice of registration ; but, as against a subsequent purchaser with actual notice, the mortgagee may claim the benefit of this notice. This being true, and appellant having actual notice of the mortgage by the very terms of his bill of sale, there does not appear to be any very great utility in this discussion of the effect of the registration laws of Texas as applied to this case. *Sparks* v. *Pace*, 60 Tex. 298; *Brothers* v. *Mundell*, 60 Tex. 240.

Another contention of appellant is this : The mortgage of Byrne conveys to him certain articles of merchandise, such as are kept for daily sale, and the stipu-

4. Effect of mortgagor reserving power to sell.

lation is that Zucchini, the mortgagor, as Byrne's agent, was to continue to sell these goods, turning in the proceeds daily to Byrne, and the same were to be credited on the mortgage debt. The 17th section of the general assignment act of that State, (which section the Supreme Court of Texas holds as applicable to mortgages as well as assignments) makes invalid a mortgage of merchantable goods, daily exposed to sale in parcels in the regular course of business, and contemplating a continuance of possession and control of the business by the owner; and declares such to be fraudulent and void. This statute has received a construction from the Supreme Court of Texas, about the real meaning of which there may be room for controversy. In other words, to some it appears clear that the making of the mortgagor the agent of the mortgagee in such cases, to carry on the business in his name and for the benefit of the mortgage debt, renders the transaction fraudulent and void. To others, however, no such meaning is to be attributed to these decisions. Happily, we are not driven in this case to the necessity of entering into an inquiry so unsatisfactory, if not unseemly, in its nature.*

The mortgaged goods consisted of two classes, one consisting of articles for daily use in that line of business, and the other consisting of furniture and other furnishings of the house not intended for sale in the usual course of business. Whatever may be the settled construction of the section of the Texas statute under consideration, it can only affect the mortgage as to the first class of goods according to our law. *Lund* v. *Fletcher*, 39 Ark. 325. Thus, eliminating from the controversy this particular subject of controversy, as did

---

*As to the effect upon the validity of a mortgage of merchandise of a provision giving the mortgagor possession with power of sale, see *Ephraim* v. *Kelleher*, 18 L. R. A. 604. (Rep.)

the court below, the only thing remaining to be done by
the court below was to determine the value of the prop-
erty not affected by this legal question, and therefore,
upon the basis of $5000 being the then present value of
all the property, as agreed upon, the court finding from
the testimony that, about two years previously thereto,
all the property was valued at $15,000, of which the
furniture constituted one-half in value, or was worth
$7500, and reasoning that naturally the salable goods
would be more apt to undergo change in quantity, and
therefore in value, than those not intended for sale, and
there being no suggestion that there had been any
special loss, addition or changes in value since that
time, concluded that the furniture had at least retained
its relative proportion of the whole value, and upon that
theory found the value thereof to be at least $2500, thus,
for all that appears, giving every advantage of doubt to
the appellant.   The court would have had a right to
withhold its judgment, and have present and definite
proof taken of the wines, whisky, etc. on hand, but it
would doubtless have been a delay for nothing.   We see
no real objection to the process by which the court as-
certained the value of the property, and, as none is sug-
gested, we will not disturb the finding.

    5. Right of mortgagee to sue for conversion.

    Finally, the appellant contends that, under the
peculiar laws of Texas, appellees have no right of action
in this kind of procedure, and several decisions of the
Supreme Court are cited in support of this view.   *Wright
v. Henderson*, 12 Tex. 43 ; *Gillian* v. *Henderson*, 12 Tex.
47 ; *Wootton* v. *Wheeler*, 22 Tex. 338; *Belt* v. *Raguet*,
27 Tex. 471; *Osborn* v. *Koenigheim*, 57 Tex. 91; and
*Sparks* v. *Pace*, 60 Tex. 298.   There is no proof of the
existence of a statute on the subject, but we will treat
the law as enunciated in the decisions referred to.   From
them we gather the law of that State to be that a mort-
gage is a mere security; that the interest of a mort-

gagor in a chattel mortgage is the subject of the levy of an execution and sale to satisfy the judgment of his creditor, but that such sale is made subject to the mortgagee's rights ; and, finally, that a mortgagee out of possession, and one not entitled to possession, cannot protect his rights by a resort to the special statutory proceeding in vogue in that State to try the rights of property. We do not find, however, that these decisions sustain the broad proposition of appellant that ''in Texas a simple mortgagee, as such, has no right of possession, and can not maintain trespass, trover or conversion, nor the statutory remedy of trial of the right of property, which is substantially the same remedy." On the contrary, we find in *Focke* v. *Blum*, 82 Tex. 436, that "a mortgagee or lien holder may sue for the conversion of the mortgaged property or for a trespass upon it." It would be strange if there were not such a remedy for the mortgagee.

We deem it unnecessary to prolong this discussion by a more extended notice of possession of Byrne, for much of the difficulty connected therewith seems to have been occasioned by the immediate interference of appellant. Nor do we deem it necessary to inquire further into the attitude of appellant in this transaction. Suffice it to say that he does not seem to be a "creditor," in the meaning of the particular statute to which he appeals ; nor does he seem to be a *bona fide* purchaser (an innocent purchaser) for value, since the consideration he paid consisted largely of the satisfaction of a pre-existing debt owing to him by Zucchini, and probably the assumption of other debts of Zucchini, of the actual payment of which, before he had knowledge of appellee's mortgage, we have no evidence.

The judgment of the Miller circuit court is affirmed.