## MASURY v. ARKANSAS NAT. BANK et al.

(Circuit Court, E. D. Arkansas, W. D.   June 2, 1898.)

1. CORPORATIONS—TRANSFER OF STOCK—LAWS GOVERNING TRANSACTION.
   A transfer of stock in a corporation is governed by the laws of the domicile of the corporation, rather than of the place where the transfer occurs.

2. SAME—RECORDING TRANSFER WITH COUNTY CLERK.
   Sand. & H. Dig. Ark. § 1338, provides that no transfer of corporate stock shall be valid, against creditors of the transferror, until recorded with the county clerk in the county where the corporation has its office. *Held*, that a pledge in New York of stock in an Arkansas corporation, not recorded in Arkansas, was void as to an attaching creditor of the transferror in the latter state.

This is a bill in equity by Grace Masury against the Arkansas National Bank and others to cancel a sheriff's sale of shares in a corporation, and to declare and foreclose a lien on the stock.   The cause was heard on demurrer to the bill.

This cause is before the court on a demurrer to the bill and amended bills. The material facts necessary to a determination of the demurrer are: Hogaboom was the owner and holder of shares of stock of the Park Hotel Company, a corporation existing under the laws of the state of Arkansas, and having its domicile in the county of Garland. That, of the shares thus owned by him, he held 400 shares evidenced by certificate No. 36. That the face value of each share was $25. That in January, 1891, he borrowed the sum of $10,000 from the complainant, and executed his note therefor; and, as security for this loan, he assigned and delivered to complainant certificate No. 36. That the loan was made and the shares assigned in the city of New York, and that but a small part of the loan has been paid off. That complainant was not advised as to the laws of this state, which require transfers of corporate stocks to be recorded in the office of the county clerk of the county in which the corporation has its domicile. That in 1896 the defendant bank instituted a suit by attachment against the said Hogaboom for a large indebtedness due it from him, and that these 400 shares of stock evidenced by certificate No. 36, assigned and delivered to complainant as security as aforesaid, were, with other stock standing in the name of said Hogaboom on the books of the corporation, seized by the sheriff under and by virtue of said writ of attachment issued and directed to him out of the circuit court of Garland county, in which court said suit was pending, as the property of said Hogaboom. That before making said levy the secretary of the Park Hotel Company, at the request of said sheriff, gave him a certificate that these 400 shares evidenced by said certificate No. 36 appeared, with other stock, which it is unnecessary to mention here, on the books of the corporation in the name of said Hogaboom; and thereupon said shares were seized by the sheriff, under said writ, as the property of Hogaboom, the defendant in said writs, in the manner prescribed by the laws of the state, and a proper return made of the facts to the court. In due time said bank recovered a judgment against said Hogaboom, the attachment sued out at the beginning of the suit was sustained, and the sheriff ordered to sell the same. That in conformity with that order of the court the sheriff sold said 400 shares of stock, and the bank, the attaching creditor, became the purchaser thereof; the complainant giving notice at the sale, and before the purchase of the bank, that she held the same as a pledge for the indebtedness due her from Hogaboom.   The sale was duly reported to the court by the sheriff, and confirmed.   That before the sale complainant applied to the secretary of the corporation for a transfer thereof, and a certificate of such transfer, in order that she might have it recorded; but he refused to make such transfer, or issue her a certificate, for the reason, as stated by him, that this stock had before then been attached by the sheriff as the property of Hogaboom, under the writ of attachment

aforesaid. That complainant did not know that the laws of Arkansas required a transfer of corporation stock to be recorded, but thought an assignment and delivery thereof sufficient to pass title. The prayer of the bill is that the sheriff's sale be canceled; that the corporation be compelled to execute to her a proper certificate of transfer, in order that the same may be filed by her for record; and that she have a foreclosure of her lien.

Rose, Hemmingway & Rose and John M. Moore, for complainant.
George G. Latta and Jacob Trieber, for defendants.

WILLIAMS, District Judge. The only questions involved are whether, under the statutes of Arkansas, a seizure of shares of the capital stock of a corporation existing under the laws of that state, by virtue of a writ of attachment, or under execution, takes precedence over a prior transfer or pledge, not transferred on the books of the corporation, nor filed for record in the office of the county clerk of the county in which the corporation transacts its business, and whether the laws of this state govern such a transfer, if made in another state. As to the last proposition, learned counsel for complainant claim that Black v. Zacharie, 3 How. 483, is conclusive that the laws of New York, where the transfer was made, and not the laws of Arkansas, of which state the company was a corporation, control. The question involved in that suit was not that of a transfer of shares, but an assignment of the equity of redemption in stock previously assigned and delivered as a pledge. The court say:

"We admit that the validity of this assignment to pass the right to Black in the stock attached depends upon the laws of Louisiana [the domicile of the corporation], and not upon that of South Carolina [where the assignment was made]. From the nature of the stock of a corporation, which is created by and under the authority of a state, it is necessarily, like every other attribute of the corporation, to be governed by the local law of that state, and not by the local law of any foreign state."

Judge Lowell, speaking of the same subject, says:

"Whatever the general principles of international law in relation to assignments of personal claims may be, the validity of a transfer of stock is governed by the law of the place where the corporation is created." Lowell, Stocks. § 50; Hammond v. Hastings, 134 U. S. 401, 10 Sup. Ct. 727; Green v. Van Buskirk, 7 Wall. 140.

I am therefore of the opinion that, unless the transfer of this stock is valid under the laws of Arkansas, the state which created the corporation, the laws of the state where the transfer was actually made cannot control. The statutes of this state regulating private corporations, and specially the transfer of stocks, are peculiar, and different from those of any state except Connecticut, from which state this statute was evidently taken. In that state it has always been held—and it is the settled rule of that state—that a transfer of corporation stock is void, against attaching creditors, unless made in strict conformity with the charter and by-laws of the corporation. Manufacturing Co. v. Smith, 2 Conn. 579; Northrop v. Turnpike Co., 3 Conn. 544; Turnpike Co. v. Bunnel, 6 Conn. 552; Dutton v. Bank, 13 Conn. 493; Shipman v. Insurance Co., 29 Conn. 253; Colt v. Ives, 31 Conn. 35; Platt v. Axle Co., 41 Conn. 255; First Nat. Bank of Hartford v. Hartford Life & Annuity Ins. Co., 45 Conn. 22.

Learned counsel for both sides have cited a large number of au-

thorities as to the construction of charters which merely provide that "no transfer of stock shall be valid, until transferred on the books of the corporation." The same provision is found in our statutes, and is section 1342, Sand. & H. Dig.; but counsel for defendants do not rely on this provision of the law, but base their demurrer on section 1338. As to the effect to be given to section 1342, the authorities are very conflicting; some holding that this provision is for the benefit of the corporation solely. In view of the legislature of this state having enacted section 1338 in addition to section 1342, it is only important to notice the fact that the courts holding that the latter section is only for the benefit of the corporation, in order that they may know who are its stockholders, entitled to vote at corporate elections and receive dividends, base their opinions principally on the fact that a creditor of a stockholder not a shareholder of the corporation has no access to the stock books, and no means to find out who are stockholders. No doubt, to meet these objections, and to leave no room for doubt, the legislature enacted the statutes now in force. Section 1338, Sand. & H. Dig., provides:

"Whenever any stockholder shall transfer his stock in any such corporation, a certificate of such transfer shall forthwith be deposited with the county clerk aforesaid, who shall note the time of said deposit and record it at full length in a book to be by him kept for that purpose; and no transfer of stock shall be valid against any creditor of such stockholder until such certificate shall have been so deposited."

The language used is so clear and unambiguous that there is really nothing to construe. It shows, as clearly as language could express it, that this provision is intended for the benefit of the creditors of the stockholders. The requirement that the transfers shall be recorded in the county clerk's office meets the objection that the creditor,—unless a stockholder,—having no access to the stock books of the corporation, cannot know who are the stockholders; for, that being a public office, every citizen can at all times ascertain from the public records whether his debtor is a stockholder or not.

There is no doubt that the tendency of modern legislation is to make this class of instruments as near negotiable as possible; but the legislature of this state has seen proper to restrict their negotiability, and, under the laws of this state, the stock may have been canceled, although the certificate thereof is still outstanding. Section 1342 gives the corporation a lien on the stock for all debts due it from the stockholder, and this lien is superior to the rights of any purchaser or pledgee, even without notice. Oliphint v. Bank, 60 Ark. 198, 29 S. W. 460; Bank of Commerce v. Bank of Newport, 27 U. S. App. 486, 11 C. C. A. 484, and 63 Fed. 98. By the provisions of section 1353, the stock of one indebted to the corporation may be sold for such debts; and section 1354 makes it the duty of the corporation to issue to the purchaser a new certificate of stock, and cancel upon its books the certificates of the indebted stockholder; and that without a surrender of the certificates. And the same procedure is prescribed when the stock is sold under attachment or execution. Section 3059, Sand. & H. Dig. The corporation laws of this state clearly intend that there shall be a public record of the ownership

of corporation stock from the time of the organization of the corporation, and this must be kept in the county where the corporation transacts its business.    Section 1334 provides that before a corporation shall commence business a duplicate of the articles of incorporation, together with a certificate under oath, must be filed for record in the county clerk's office, showing the names of each stockholder, the number of shares held by each, and the amount paid on the stock. Section 1344 provides for a like record if the stock is increased. Section 1337 provides for a record, to be filed annually, showing, among other things, the names of each stockholder, and the number of shares held by each.    Section 1357 provides that, if the place of business is removed from one county to another, a certified copy of all records showing the state of its affairs must be procured from the county clerk of the county from which it is removed, and recorded in the county to which it is removed.    It thus appears that the intention of the legislature was to provide for the same system of registration for this kind of property as is provided for real estate.

The fact that section 1338 was enacted in addition to section 1342 is almost conclusive that the legislature intended to protect creditors against unrecorded transfers.    While I have not been able to find any statute exactly like section 1338 which has ever been construed by a supreme court, there are several which, although not as plain as this, yet have invariably been construed by the highest courts of those states in favor of the attaching creditor.    In Alabama the statute provides that, unless the transfer is registered within 15 days, it shall be void as to bona fide creditors.    A transfer of stock without such registration within the time prescribed by statute was held void as against an attaching creditor.    Bank v. Pinckard, 87 Ala. 577, 6 South. 364; Abels v. Insurance Co., 92 Ala. 382, 9 South. 423. In Colorado the statute declares transfers void, for all purposes, unless registered within 60 days.    In passing upon this statute the supreme court of that state say:

"There is not much room for construction of this language.    The assignment of stock vests in the assignee an inchoate title, which for sixty days has the effect of a complete title; but, unless within that time it is perfected by the entry of the transfer upon the books of the company, it expires, and the transfer becomes invalid.    The title of the assignor has not been devested, and the stock is subject to attachment at the suit of his creditors." Conway v. John, 14 Colo. 30, 23 Pac. 170; Bank v. Hastings, 7 Colo. App. 129, 42 Pac. 691.

The Wisconsin statute is as follows:

"But such transfer shall not be valid except between the parties thereto, until the same shall have been so entered on the books of the corporation." Rev. St. § 1751.

In a well-considered case it was held by the supreme court of that state that an execution levied on stock before the transfer is entered on the books of the corporation is entitled to priority over the transferee.    In re Application of Murphy, 51 Wis. 519, 8 N. W. 419.    In New Mexico the statute is like that of Wisconsin, and the same conclusion was reached by its court.    Bank v. Folsom, 7 N. M. (Gild.) 611, 38 Pac. 253.    In Maine and Iowa similar statutes prevail, and like

constructions were made by the courts of those states.    Bank v. Cutler. 49 Me. 315;  Ft. Madison Lumber Co. v. Batavian Bank, 71 Iowa. 270, 32 N. W. 336.

In Massachusetts the statute is:

"No sale, assignment or transfer of stock in a corporation shall * * * affect the right of an attaching creditor until it is recorded upon the books of the corporation."  Pub. St. c. 105, § 24.

In a proceeding in equity, like this, the rights of an attaching creditor were held to be superior to those of a vendee of an unrecorded sale.    Newell v. Williston, 138 Mass. 240;  Bank v. Williston, Id. 244.

Learned counsel for complainant rely on the decisions of the supreme court of the United States in Bank v. Lanier, 11 Wall. 369, and Bullard v. Bank, 18 Wall. 589, as sustaining their view of this case.    Neither of these cases can have any application to the case at bar.    In the Lanier Case, which was an action against the bank for a refusal to make a transfer of its stock to a purchaser who was the holder by assignment of the certificate of stock, the liability of the bank was sustained by reason of its conduct, which created an estoppel.    The court say:

"It is clear that the bank, in allowing its stock to be transferred to other parties while the certificates were outstanding in the hands of a bona fide holder, was guilty of a breach of corporate duty; and, as its conduct operated to the injury of Lanier and Handy, an action will lie in their behalf to obtain satisfaction for the injury."

The duties of the bank, the court say, were regulated by the act of congress which created the corporation, and its own by-laws, which provided that the stock of the bank shall be transferable only on the books of the bank, subject to the provisions and restrictions of the act of congress.    Having made a transfer without surrender of the certificate, which certificate showed on its face that it was transferable only on its surrender, the bank was guilty of a wrong.    In the Bullard Case the court held that the transfer of national bank shares was regulated solely by the acts of congress,—they existing under those acts,—and, as those acts gave no authority to a bank to limit the right of transfer by a by-law, such a by-law is void.

In this state, registration laws have always been strictly construed.    As early as 1848 the supreme court held that the statute regulating the registration of mortgages (now section 5091, Sand. & H. Dig.) must be strictly construed, and a mortgage not recorded, or, if recorded, defectively acknowledged, so as not to entitle it to record, is void, against an attaching creditor, although he had actual notice thereof.    Main v. Alexander, 9 Ark. 112.    This case has been recognized as the settled law of the state ever since.    Learned counsel for complainant, with apparent sincerity, contended in their argument that this case has been overruled by Byers v. Engles, 16 Ark. 543, and Tennant v. Watson, 58 Ark. 252, 24 S. W. 495.    But they overlook the fact that those cases construe different statutes; one construing section 5091, and the other section 728, Sand. & H. Dig.    The latter statute makes an exception of parties purchasing with actual notice. This is fully shown in the decision of the supreme court in the late

87 F.—25

case of Ghio v. Byrne, 59 Ark., on page 292, 27 S. W. 243. Doswell v. Adler, 28 Ark. 85, overlooks entirely the distinction between these two statutes, and also Main v. Alexander, and the numerous cases following that decision. Since the decision of Doswell v. Adler, which was decided in 1873, the supreme court of this state has delivered written opinions in 11 cases on that question, and in none of them is that case recognized as an authority, while Main v. Alexander is followed. The most recent decision was published as late as October, 1895. Milling Co. v. Mikles, 61 Ark. 123, 32 S. W. 493. When the corporation act was enacted by the legislature, both of these sections were on the statute book, and had been construed many times. The fact that the legislature, with full knowledge of the construction given to those statutes by the supreme court, saw proper to follow section 5091, and not except purchasers with actual notice from the provisions of the act, as was done in section 728, is proof conclusive that it did not intend to limit the rights of these creditors to such as purchase without notice. It may be a great hardship on complainant to be thus deprived of her security, when, as alleged in the bill, she was not aware of the statutes of this state, but even courts of equity are powerless to afford relief against the harsh provisions of a statute. As to the policy of these statutes, courts cannot control that. The framers of the constitution in their wisdom have vested that power in another department of the government. Courts must enforce the laws as enacted by the legislature, unless they are in conflict with some provision of the constitution, and that is not contended for. It follows from these views that the demurrer to the bill must be sustained, and the bill dismissed.