## MARION PHOSPHATE CO. v. PERRY.

(Circuit Court of Appeals, Fifth Circuit. February 17, 1896.)

### No. 433.

FOREIGN CORPORATIONS—PROLONGING EXISTENCE FOR PURPOSES OF SUIT. ·
    State statutes which provide that corporations shall continue to exist for a certain time after the time fixed for dissolution, for the purpose of prosecuting and defending suits, and that no body or persons acting as a corporation shall set up the want of a legal organization as a defense to a suit against them as a corporation (McClel. Dig. Fla. p. 234, §§ 27, 28), do not control or affect foreign corporations merely doing business in the state; and a suit against such a corporation abates upon its dissolution, so that, if a judgment be thereafter entered against it, the same is void.

Appeal from the Circuit Court of the United States for the Southern District of Florida.

A. R. Lawton and T. M. Cunningham, Jr., for appellant.

Before PARDEE and McCORMICK, Circuit Judges, and BOARMAN, District Judge.

PARDEE, Circuit Judge. The appellee, Rachel Perry, a citizen of the state of Florida, brought her bill in the chancery court of Marion county, state of Florida, against the Marion Phosphate Company, a Georgia corporation, and therein alleged that on the 16th day of December, 1892, she obtained a judgment on the common-law side of that court, for the sum of $2,158.38, against the Chatham Investment Company, a body corporate created under the laws of the state of Georgia; that the Chatham Investment Company was the owner of large bodies of land in the state of Florida, some of them lying in Marion county, which were in 1891, by divers deeds, conveyed by the said Chatham Investment Company, for the consideration of $5,000,000, to the Marion Phosphate Company; that soon after such conveyances, and before the aforesaid judgment was obtained, the Chatham Investment Company dissolved, and surrendered its charter; that both of the above-named corporations were organized and chartered by the same stockholders, the said Chatham Investment Company being organized for the purpose of purchasing said lands and holding them in trust for the Marion Phosphate Company; that the consideration paid by the Marion Phosphate Company to the said Chatham Investment Company was the defendant's certificates of capital stock, based upon said lands, the persons holding stock in said Chatham Investment Company surrendering their certificates in that corporation for certificates of defendant's capital stock, at the ratio of ten shares of defendant's stock to one in said Chatham Investment Company; that in reality the organization of the defendant company was only the reorganization of said Chatham Investment Company, with the same capital, same stockholders, same land, and about the same officers; that the defendant company took the lands and property of the Chatham Investment Company subject to all claims, debts, liens, and obligations then existing against it; and that defendant is not a bona fide purchaser of the lands of the said dissolved company, as against complainant's judgment. Certain lands are described in the bill, lying in Marion county, Fla., to which complainant asserted that she had an equitable lien for the satisfaction of the above judgment, wherefore she prayed, etc. To the bill was attached an exhibit showing that on the 16th day of December, 1892, the said Rachel Perry, in the circuit court of Marion county, Fla., recovered a judgment by default against the Chatham Investment Company, a body corporate under the laws of the state of Georgia, for the sum of $2,154, principal and interest, and $4.38, costs of court. The Marion Phosphate Company removed the case to the circuit court for the Southern district of the state of Florida, on the ground of diverse citizenship. In the circuit court the Marion Phosphate Company filed a demurrer to the said bill, for want of equity, particularly charging that the bill, upon its face, discloses that the judgment against the Chatham Investment Company was recovered December 16, 1892, and that the said Chatham Investment Company was a corporation created under the laws of Georgia, and that the said corporation became dissolved, and surrendered its charter, in 1891,— long prior to the rendition of said judgment. This demurrer was

overruled by the court, and thereafter the Marion Phosphate Company was driven to answer, and other proceedings were had, resulting in a decree in favor of Rachel Perry against the Marion Phosphate Company to the effect that the judgment obtained by the complainant in the circuit court of Marion county against the Chatham Investment Company was a valid judgment; that the Marion Phosphate Company held the lands of the Chatham Investment Company in trust for the payment of the complainant's debt; that the complainant had an equitable lien on the said lands,—and condemning the Marion Phosphate Company to pay the amount of said judgment, in default whereof the lands mentioned in the bill should be sold to pay the same. The proceedings had after overruling the demurrer are not necessary to recapitulate, except to notice that it was fully shown in the answer, and established by undisputed evidence, that more than six months prior to the institution of the suit at law by Rachel Perry against the Chatham Investment Company in the circuit court of Marion county, Fla., the Chatham Investment Company, under and in accordance with the laws of Georgia, had, as a corporation, surrendered its charter, and had been legally dissolved as a corporation. The appellant makes nine specific assignments of error, the last one being that the court erred in overruling the demurrer of the defendant to the complainant's bill.

The vital question in the case is whether the judgment at law rendered against the Chatham Investment Company, a corporation which at the time was legally dissolved, and which judgment is the base of this suit, is a valid judgment. We think this question is sufficiently presented by the demurrer to the bill. That a dissolution of a corporation abates all suits against it is familiar law of the text-books. Mor. Priv. Corp. § 1031, thus declares:

"The dissolution of a corporation, at common law, not only means that the company has lost its franchises, and can no longer act in a corporate capacity, but it implies that the corporation has wholly ceased to exist in legal contemplation, and will not be recognized as a corporate body for any purpose. It follows that suits brought by or against a corporation are abated by its dissolution, and a judgment purporting to be rendered against a corporation which is not in existence is a nullity."

Any number of cases can be cited to support the text. In Bonaffe v. Fowler, 7 Paige, 576, it was held that a judgment recovered against a corporation after it has been dissolved is not even prima facie evidence of a debt due from the corporation at the time of its dissolution; and this decision is amply supported by adjudged cases. In Thornton v. Railway Co., 123 Mass. 32, it is held that a court has no jurisdiction in equity over a bill by a creditor against a corporation to apply to the payment of a judgment property of the debtor in the hands of a third party, if the judgment was invalid at the time it was recovered, and the corporation had ceased to exist. We do not find in the transcript any opinion of the trial judge, and therefore we do not know how he viewed the general law relating to abatement of suits against corporations on dissolution; but we gather from the record that, in his opinion,

sections 35 and 36 of the act of the legislature of Florida of August 8, 1868 (McClel. Dig. Fla. p. 234, §§ 27, 28; Rev. St. Fla. §§ 2155, 2159), applied to the Chatham Investment Company, a corporation of the state of Georgia, and thus controlled the case. Those sections are as follows:

"Sec. 27. All corporations shall continue bodies corporate for the term of three years after the time of dissolution from any cause, for the purpose of prosecuting or defending suits by or against them, and enabling them gradually to settle their concerns, to dispose of and convey their property, and to divide their capital stock, but for no other purpose.

"Sec. 28. No body or persons acting as a corporation under this chapter, shall be permitted to set up the want of a legal organization as a defence to an action against them as a corporation; nor shall any person sued upon a contract made with such a corporation, or sued for an injury to its property, or a wrong done to its interest, be permitted to set up a want of such legal organization in his defense."

We do not find in these sections, nor, in fact, in any part of the act of 1868, any intention on the part of the lawmaking power of the state of Florida to control or regulate the corporations of other states. Under the statute, it is only by inference that foreign corporations were permitted to do business in the state. Section 24 was as follows:

"Suits against corporations shall be commenced only in the county where such corporation shall have, or usually keep, an office for the transaction of its customary business; and in the case of companies incorporated by other states and doing lawful business in this state, suits shall be commenced in the county, wherein such company may have an agent or other representative." McClel. Dig. Fla. p. 231, § 17.

Section 29 of the act put foreign corporations having property in the state on the same footing as individuals, residents of other states, in the matter of attachment. These last-quoted sections indicate that there was no purpose in the act to in any wise treat foreign corporations doing business in the state as Florida corporations. Unless, by legislation, a foreign corporation doing business in the state is made a citizen of Florida, we are unable to see how the dissolution of such corporation can be affected by the laws of Florida. In Pennsylvania R. Co. v. St. Louis, etc., R. Co., 118 U. S. 290, 295, 6 Sup. Ct. 1094, the supreme court say:

"It does not seem to admit of question that a corporation of one state, owning property and doing business in another state by permission of the latter, does not thereby become a citizen of this state also."

See, also, Goodlett v. Railroad Co., 122 U. S. 405, 7 Sup. Ct. 1254

"A corporation cannot migrate or change its residence without the consent, express or implied, of its state; but it may transact business wherever its charter allows, unless prohibited by local laws." "It must dwell in the place of its creation, and cannot migrate to another sovereignty." Bank v. Earle, 13 Pet. 519, 520; Railroad Co. v. Koontz, 104 U. S. 5, 12.

Railroad Co. v. Gebhard, 109 U. S. 527, 3 Sup. Ct. 363, is to the same effect; and, further, that:

"A corporation of one country, doing business in another, is subject to such control, in respect to its powers and obligations, as the government which created it may properly exercise. Every person who deals with it anywhere impliedly subjects himself to such laws of its own country affecting its pow-

ers and obligations as the known and established policy of that government authorizes. Anything done in that country under the authority of such law which discharges it from liability there discharges it everywhere."

The Chatham Investment Company, incorporated under the laws of the state of Georgia, when dissolved according to those laws, became a dissolved corporation everywhere,—dead in Florida as well as Georgia. As the case presents itself to us, we are clearly of opinion that the demurrer to the bill of complaint should have been sustained. As this necessitates the reversal of the judgment, and directs a dismissal of the bill, it is unnecessary to consider the other assignments of error. Although we have found the judgment at law, which was the basis of complainant's bill, invalid, we are inclined to the opinion, from our examination of the record, that the appellee may have equities which, properly presented, can be recognized and enforced. We shall therefore reverse the decree appealed from, and remand the cause, with instructions to dismiss the bill, but without prejudice. And it is so ordered.