LONDON, PARIS & AMERICAN BANK, Limited, v. ARONSTEIN.

(Circuit Court of Appeals, Ninth Circuit. July 7, 1902.)

No. 803.

1. CORPORATIONS—TRANSFER OF STOCK—RIGHT OF EXECUTOR.

Under the law of California an executor is entitled to have shares of stock in a corporation, owned by his decedent, transferred by the corporation to his own name as such executor.

2. SAME—REFUSAL TO TRANSFER STOCK—LIABILITY FOR CONVERSION.

The refusal of a corporation without lawful excuse to transfer shares of stock on its books to one who is entitled to such transfer may be treated as a conversion of the stock, and its value may be recovered in an action at law.

3. SAME—BY-LAWS REGULATING TRANSFER OF STOCK.

Provisions in the by-laws of a corporation giving it the option to refuse to transfer stock on its books when the holder is indebted to the corporation, and requiring the instrument of transfer to be executed by both transferror and transferee, have no application where the transfer demanded is to the executrix of a deceased stockholder, in whom the title and right to a transfer vests by operation of law.

4. SAME—FOREIGN CORPORATION DOING BUSINESS IN CALIFORNIA—LAWS GOVERNING TRANSFER OF STOCK.

The constitution of California provides that every business corporation organized or doing business in the state shall maintain an office therein for the transaction of its business, where transfers of stock shall be made. It also provides that no corporation organized outside of the state shall be allowed to transact business in the state on more favorable conditions than are prescribed by law for domestic corporations. Held, that a British corporation, which transacted business in California, and there maintained an office in charge of managers who were empowered to transfer stock and issue certificates for shares, and which there sold and issued stock to a citizen of California, was governed as to the transfer of such shares by the laws of California, and that on the death of the stockholder his executrix, appointed under the laws

¶ 2. See Corporations, vol. 12, Cent. Dig. §§ 513, 514.

¶ 4. Foreign corporations "doing business" in state, see note to Wagner v. Meakin, 33 C. C. A. 585.

of California, was entitled to have the stock transferred to her name as executrix at the corporation's office in that state, and could not be denied such right because the estate was not administered upon at the domicile of the corporation in England.

In Error to the Circuit Court of the United States for the Northern District of California.

The answer of the defendant denies that it has any officers in the city and county of San Francisco or in the state of California save and except managers and cashiers of its banking business local to the state of California, and avers that it is a corporation duly organized and existing under and by virtue of the laws of England and Great Britain, having its principal place of business in London, England. That there is in full force and effect in England and Great Britain an act of parliament providing "that every person who shall administer the personal estate of any person dying after the passage of this act, or any part thereof, without proving the will of the deceased, or taking out letters of administration of such personal estate, within six calendar months after the death of the person so dying, shall forfeit and pay the sum of fifty pounds to be recovered in his majesty's court of exchequer, by action of debt," etc. This statute is known as "Chapter XC, Anno Regni Georgii III Tricesimo Septimo," and quotes other acts passed August 25, 1857, by the parliament of Great Britain, relating to probate and letters of administration, and also an act of parliament passed July 5, 1865, to amend the procedure and practice in crown suits in courts of exchequer, providing the method of administering upon the estates, and the act entitled "Customs and Inland Revenue Act," passed by the parliament of Great Britain in 1881, known as "44 & 45 Vict. c. 12," section 40 thereof providing for a duty to be charged in the settlement of estates of deceased persons, which duty was changed by the "Finance Act" of 1894 (57 & 58 Vict. c. 30), which act provided that, where an estate exceeds £1,000 the duty shall be £3 per £100, and, in addition thereto, 1 per cent. duty where the property is settled. That said defendant was incorporated under what is known as the "Companies Act," entitled "An act for the incorporation, regulation, and winding-up of trading companies and other associations" (25 & 26 Vict. c. 89). By part 2, § 22, of said act, it was provided that the shares of any member in the company shall be personal estate, capable of being transferred in manner provided by the regulations of the company. That by section 39 of said act it was provided: "Every company under this act shall have a registered office to which all communications and notices may be addressed; if any company under this act carries on business without having such an office, it shall incur a penalty not exceeding five pounds for every day during which business is so carried on." That by section 8 of the first schedule of said act it is provided that "the instrument of transfer of any share in the company shall be executed by both the transferrer and transferee, and the transferrer shall be deemed to remain a holder of such share until the name of the transferee is entered in the register book in respect thereof." By section 12 of said schedule it is provided that "executors or administrators of a deceased member shall be the only persons recognized by the company as having any title to his share." That by the articles of memorandum of association of the defendant, and by resolutions and by-laws duly passed, it was provided that the registered office of the company should be situated in England; that the register of shareholders shall be kept by the secretary of the company under the control of the board; that "the instrument of transfer of any share shall be in a form approved by the board, and shall be executed by both the transferrer and transferee," and then sets forth the form of transfer adopted by the corporation. Section 30 of the said articles of memorandum provides that "the transferrer of any share shall be deemed to remain the holder of such share until the name of the transferee is entered in the register in respect thereof." Section 31 provides that the board may decline to register any transfer made by a member indebted to the company, or where the certificate of the share proposed to be transferred is not left with the secretary for examination. Section 33 provides that:

"The survivor or survivors, in the case of joint holders, and the executors or administrators of a deceased member in the case of a sole holder, shall be the only persons recognized by the company as having any title to a share registered in the name of such member, and the company shall not be affected by any notice of any trust, or of any agreement to transfer or charge any registered share, or of any equitable, contingent, future or partial interest in any registered share, or of any other right in respect of such share, except an absolute right thereto in the person from time to time registered as the holder thereof, and except also the right of any person becoming entitled to a registered share in any way (other than by transfer) to become a registered shareholder, or to transfer such share." Section 34 provides that "any person becoming entitled to a registered share in consequence of the death of any member, or in any way other than by transfer may be registered as a member in respect of such share." That by article 14 of said by-laws of said corporation it is provided that "the directors may appoint an authority in San Francisco, or such other place as the board may from time to time think fit, to approve of or reject transfers of shares, and to direct the registration of approved transfers in a register of shares, which shall be kept at such place as aforesaid." That pursuant to said by-laws it was resolved by the board of directors of said corporation on the 15th day of November, 1899, that the managers of the said London, Paris & American Bank, Limited, in San Francisco, be empowered, and they were authorized, to pass and register transfers of shares, and to issue, under the local seal of the company, new certificates to the holders or transferees of such shares, subject to the articles of association and by-laws of defendant to approve or reject the transfer. It is further alleged that on the 12th day of January, 1884, Adolph Aronstein was a resident of the city and county of San Francisco, state of California, and in writing made the following application to the defendant, to wit: "To the Directors of the London, Paris and American Bank, Limited.—Gentlemen: Having paid to your bankers the sum of fifty pounds, being a deposit of one pound per share on an application for fifty shares of twenty pounds each in the capital of the London, Paris and American Bank, Limited, I hereby request that you allot to me that number, and I hereby agree to accept such shares, or any less number you may allot to me, subject to the memorandum and articles of association of the company, and I further agree to pay to your bankers the sum of two pounds per share on allotment, and the balance as when required, and I hereby authorize you to place my name on the register of shareholders in respect of such shares. [Signed]    Adolph Aronstein." That said Adolph Aronstein departed this life in the city and county of San Francisco, state of California, at said time being a resident of the city and county of San Francisco, state of California, on the 27th day of August, 1901; and that the shares which the said plaintiff alleges the said defendant has converted are the same shares issued to said Adolph Aronstein under and by virtue of said contract, laws, memorandum, and schedule and by-laws. That said Adolph Aronstein died testate in the city and county of San Francisco, state of California, on the 27th day of August, 1901. That at the time of his death he was the owner and holder of said shares of the said London, Paris & American Bank, Limited. That said Adolph Aronstein died testate, as aforesaid, and that no administration has been taken out upon his estate under the laws of England or Great Britain, and that under the laws hereinbefore quoted, if any transfer were made by said corporation other than under the laws of Great Britain, the said corporation would become liable for large costs, fines, and duties. It also alleges that, if said transfer were made at any time by said defendant "under said act of 28 & 29 Vict. § 57, the said London, Paris & American Bank, Limited, would become liable to the said commissioners for the value of said property, and for the duty thereon, and for the costs of the proceeding"; that neither the decedent nor his personal representative nor his duly authorized executrix has complied with the provisions of the companies act, nor with the articles of association, by-laws, agreements, or resolutions of the said corporation in force and effect at the time of the issuance of said shares and at all times since; that there is no instrument of transfer of said shares in form approved by said board; that there is no transfer of

any shares in said corporation executed by both the transferrer and transferee; that a certificate of said shares is not and has not been left with the secretary for examination. The answer further alleges that by subdivision 31 of the memorandum of association and under the by-laws of said corporation it is provided that "the board may decline to register any transfer made by a member indebted to the company, or where the certificate of the share proposed to be transferred is not left with the secretary for examination, or where the transferee is a person under any legal incapacity, or in the case of any share or shares not being fully paid up where the transferee is not approved by the board"; that said plaintiff has not complied with said subdivision ,31; that each and every of said shares mentioned in the complaint herein lacks £4 sterling of being fully paid up; that said shares are not transferable under section 33, before quoted; and that there has not been produced to the said board such evidence of title as such board requires under section 34, and as is necessary under the laws of Great Britain, namely, administration upon the estate of the decedent and under the laws of Great Britain, and because the fee required by said section 38 has not been paid, and because the administration charges due upon said shares of stock have not been paid as required by the laws of Great Britain.

The provisions of the constitution and laws of California referred to in the opinion read as follows: Article 12, § 14, Const.: "Every corporation, other than religious, educational, or benevolent, organized or doing business in this state, shall have and maintain an office or place in this state for the transaction of its business, where transfers of stock shall be made, and in which shall be kept, for inspection by every person having an interest therein, and legislative committees, books in which shall be recorded the amount of capital stock subscribed, and by whom; the names of the owners of its stock, and the amounts owned by them, respectively; the amount of stock paid in, and by whom; the transfers of stock; the amount of its assets and liabilities, and the names and places of residence of its officers." Article 12, § 15, provides: "No corporation organized outside of the limits of this state shall be allowed to transact business within this state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state."

Henry Ach, for plaintiff in error.

Rosenbaum & Scheeline, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge (after stating the facts as above). This suit was commenced by Rosalie Aronstein, as executrix of the last will and testament of Adolph Aronstein, deceased, to recover damages against the London, Paris & American Bank, Limited (plaintiff in error herein), for the conversion of 50 shares of the capital stock of the corporation, owned by her deceased husband at the time of his death, she having demanded from the officers of the corporation at its place of business in the city and county of San Francisco, state of California, that said shares be transferred to her as such executrix upon the books of the corporation, and said demand having been met by a refusal. From the averments in the complaint it appears that Adolph Aronstein was a resident of San Francisco at the time of his death, the 27th day of August, 1901; that the defendant is a corporation organized under the laws of England, and is engaged in carrying on a banking business in San Francisco, and "has books in said city and county for the transfer of its capital stock"; that at the time of the demise of Adolph Aronstein he was the owner and pos-

sessor of 50 shares of the capital stock of the defendant corporation of the value of $8,500. To this complaint the corporation interposed a general demurrer, which was overruled by the court. Thereafter the corporation filed an answer, setting up the acts of parliament and laws of England, its charter and by-laws (a reference to which is made in the statement of facts), under which it claims that it is not authorized and cannot be compelled to make any transfers of shares of its stock in California which are held by executors or administrators of deceased persons who were residents of this state at the time of their death, "without administration upon such property under the laws of England and Great Britain." Upon the coming in of this answer the plaintiff in the court below (defendant in error herein) moved the court for judgment in her favor upon the pleadings, which motion was granted. Plaintiff in error contends: (1) That the court erred in overruling the demurrer; (2) that it erred in granting the motion for judgment on the pleadings.

1. Plaintiff in error, in support of its first assignment of error, contends that under the laws of California an executor or administrator does not obtain title to personal property belonging to the estate, but is only entitled to the possession thereof for the payment of debts against the estate and expenses of administration, and argues that the defendant in error had no legal right to have the shares of stock belonging to her husband's estate transferred to her own name. The answer to this is that she did not demand the transfer of the stock in her own individual name, but did demand "that the officers of said corporation should transfer the said shares of stock on the books of said corporation to plaintiff as executrix of the last will of said Adolph Aronstein, deceased." Although the plaintiff in the suit might not, at the time she made the demand, have been entitled to have a transfer made to herself individually on the ground that she was the owner, having title to the shares of stock, she, nevertheless, as executrix, had such a special right to the property as would enable her to bring a suit to recover its value if it was wrongfully converted. Halleck v. Mixer, 16 Cal. 574; Jahns v. Nolting, 29 Cal. 507, 510; Ham v. Henderson, 50 Cal. 367, 369. The fact suggested by the defendant in error that Mrs. Aronstein might vote the stock (Railway Co. v. Hellman, 109 Cal. 571, 42 Pac. 225), or be eligible to a corporate office (Cook, Stock & S. § 623; Schmidt v. Mitchell [Ky.] 41 S. W. 929, 72 Am. St. Rep. 427), without having the transfer made on the books of the corporation, does not change the rule. The transfer of the shares of stock is a right to which, under the law of California, she is entitled, irrespective of other privileges given her by law. In Ralston v. Bank, 112 Cal. 208, 213, 44 Pac. 476, 477, the court said:

"We are not convinced that there is any fiction in ascribing the term 'conversion' to the defendant's refusal; but, however this may be, there is at the present day no difficulty in applying the remedy which was afforded by the common-law action of trover to a case where the owner of corporate shares has been wrongfully deprived thereof, even though his possession of the certificate evidencing his title has not been disturbed. Payne v. Elliot, 54 Cal. 339, 35 Am. Rep. 80. See People v. Williams, 60 Cal. 1; Dodge v. Meyer, 61 Cal. 405. 'It may be stated as a rule,' says an eminent author,

though he dissents from its principle, 'that, where a corporation refuses to allow a transfer of shares upon its books, the assignee may treat this as a conversion of his shares, and sue the company for their value.' Mor. Priv. Corp. § 217. Such is the law as declared and enforced in this state. Kimball v. Water Co., 44 Cal. 173, 13 Am. Rep. 157; Fromm v. Mining Co., 61 Cal. 629. A suit in equity, where registration of the transfer may be compelled, or damages recovered as an alternative, may be preferable, but it is not exclusive of the remedy invoked in this action. Mor. Priv. Corp. §§ 216–221; Cook, Stock & S. §§ 289–292."

The executrix was entitled to the dividends, if any, on the shares of stock, and she was entitled to have the shares of stock transferred upon the books of the company to enable her to draw such dividends. In Low. Tr. Stocks, § 137, it is said:

"If a corporation refuses, without lawful excuse, to transfer stock upon its books · * * * to the purchaser, the latter may treat the refusal as a complete denial of his ownership, and he may, therefore, sue the corporation, and recover the full value of the stock, as in a suit for the conversion of a chattel at common law."

The court did not err in overruling the demurrer.

2. The second assignment of error presents the question whether the constitution and statutes of the state of California or the acts of parliament and laws of Great Britain govern the question at issue. In the consideration of this question it must be remembered that during the time of all the transactions between the parties relative to the shares of stock in controversy Adolph Aronstein was, in his lifetime, a citizen and resident of the city of San Francisco, Cal., and that all of said business transactions occurred between the parties in the city and county of San Francisco. Preliminary to any discussion on the main point involved herein, it is deemed best to refer to a few of the many provisions in the charter and by-laws of the corporation. The prohibition against the transfer of the shares of stock where the holder thereof is indebted to the corporation has no application to a case like the present. Mrs. Aronstein legally represents the decedent. As such she is entitled to the possession of the shares of stock held by him in his lifetime as a part of the estate. If the corporation had any lien thereon for any part of the unpaid purchase price, it would not be lost by a transfer of the stock to her on the books of the company as the executrix of the estate. The lien on the shares, if any existed at the time of his death, would remain after such a transfer the same as before. The clause as to the form of the transfer has relation only to cases where the transferror and transferee are both living. How could the owner of the stock after his death join with his executrix in signing the form prescribed by the by-laws for the transfer of the stock on the books of the corporation? The application for the transfer of the shares of stock as demanded by the defendant in error did not have to be presented to the home secretary of the corporation for examination. Article 14 of the by-laws of the corporation, and the resolution passed on the 15th day of May, 1899, allow the transfer of the stock, if otherwise legal, to be made in San Francisco, Cal., and the constitution of California requires it to be so transferred. It is deemed unnecessary to notice any of the other provisions of the by-

laws of the corporation. It is evident from a perusal thereof that they constitute no defense to this action, except upon the theory that the corporation was not required to make the transfer until there was an administration upon the estate of Dr. Aronstein, deceased, in Great Britain. If the defendant in error be compelled to have the estate administered upon in England, she will, in addition to the expense incident thereto, be required to pay an inheritance tax to the English government of about $600; but if the law, as applied to the facts herein, demands that such steps must be taken, she will have to bear this extra burden. Does the law require it? It must be conceded that, if there were no provisions in the constitution or statutes of California relating to or governing this question, the laws of Great Britain and the articles or memorandum of association of the plaintiff in error, which constitute its charter, would prevail.

In Relfe v. Rundle, 103 U. S. 222, 225, 26 L. Ed. 337, the court said:

"No state need allow the corporations of other states to do business within its jurisdiction unless it chooses, with perhaps the exception of commercial corporations; but, if it does, without limitation, express or implied, the corporation comes in as it has been created. Every corporation necessarily carries its charter wherever it goes, for that is the law of its existence. It may be restricted in the use of some of its powers while doing business away from its corporate home, but every person who deals with it everywhere is bound to take notice of the provisions which have been made in its charter for the management and control of its affairs both in life and after dissolution."

In Railroad Co. v. Gebhard, 109 U. S. 527, 537, 3 Sup. Ct. 363, 369, 27 L. Ed. 1020, the same principle is announced with greater elaboration. Among other things, the court said:

"A corporation 'must dwell in the place of its creation, and cannot migrate to another sovereignty' (Bank v. Earle, 13 Pet. 588, 10 L. Ed. 274), though it may do business in all places where its charter allows and the local laws do not forbid (Railroad Co. v. Koontz, 104 U. S. 12, 26 L. Ed. 643). But wherever it goes for business it carries its charter, as that is the law of its existence (Relfe v. Rundle, 103 U. S. 226, 26 L. Ed. 337), and the charter is the same abroad that it is at home. Whatever disabilities are placed upon the corporation at home it retains abroad, and whatever legislative control it is subjected to at home must be recognized and submitted to by those who deal with it elsewhere."

See, also, Phosphate Co. v. Perry, 20 C. C. A. 490, 74 Fed. 425, 428, 33 L. R. A. 252; Murfree, Foreign Corp. § 18; Story, Confl. Laws, § 23.

In line with these general principles it has been held that the validity of the assignment to pass title to stock in a corporation depends upon the law of the domicile of the corporation. Black v. Zacharie, 3 How. 483, 511, 11 L. Ed. 690; Green v. Van Buskirk, 7 Wall. 139, 19 L. Ed. 109; George H. Hammond & Co. v. Hastings, 134 U. S. 401, 10 Sup. Ct. 727, 33 L. Ed. 960; Masury v. Bank (C. C.) 87 Fed. 381. These and other authorities of like import are cited by the plaintiff in error as sustaining the proposition that the laws of Great Britain are paramount. Within the limits stated, they are recognized as controlling; but not beyond. The constitution and statutes of California, which are copied in the statement of facts,

must also be examined, construed, and given the full weight to which they are entitled. What is the result? When the plaintiff in error came to California for the purpose of transacting its business, it brought its charter with it as evidence of the laws of its existence, of its right to do business. It might, if the state of California had deemed it proper, have been excluded from the transaction of business in this state. But under its laws she chose to permit such corporation to do business within her borders, subject to certain conditions and regulations prescribed by her constitution or imposed by statutory regulations. Recognition of its existence in other states, and enforcement of its contracts made therein, rest upon comity, and not upon inherent right. Under this comity California extends to foreign corporations the privilege of exercising the powers conferred by their charters beyond the limits of the country wherein they have their origin and existence. The only restriction on this rule of comity is that in giving effect to the foreign laws the state has properly taken the precaution to prescribe regulations and impose certain conditions, in order that no wrong, injury, or injustice may be done to its own citizens, and to see that the policy of its own laws is in no way contravened or impaired. This comity embraces and recognizes the artificial person which the foreign country created with all its capacities, obligations, liabilities, and powers. In Hooper v. California, 155 U. S. 648, 655, 15 Sup. Ct. 207, 210, 39 L. Ed. 297, the court said:

"The state of California has the power to exclude foreign insurance companies altogether from her territory, whether they were formed for the purpose of doing a fire or a marine business. She has the power, if she allows any such companies to enter her confines, to determine the conditions on which the entry shall be made. And, as a necessary consequence of her possession of these powers, she has the right to enforce any conditions imposed by her laws as preliminary to the transaction of business within her confines by a foreign corporation, whether the business is to be carried on through officers or through ordinary agents of the company, and she has also the further right to prohibit a citizen from contracting within her jurisdiction with any foreign company which has not acquired the privilege of engaging in business therein, either in his own behalf or through an agent empowered to that end. The power to exclude embraces the power to regulate, to enact and enforce all legislation in regard to things done within the territory of the state which may be directly or incidentally requisite in order to render the enforcement of the conceded power efficacious to the fullest extent, subject always, of course, to the paramount authority of the constitution of the United States."

Noble v. Mitchell, 164 U. S. 367, 370, 17 Sup. Ct. 110, 41 L. Ed. 472; Insurance Co. v. Spratley, 172 U. S. 602, 621, 19 Sup. Ct. 308, 43 L. Ed. 569; Waters-Pierce Oil Co. v. Texas, 177 U. S. 28, 46, 20 Sup. Ct. 518, 44 L. Ed. 657; Insurance Co. v. Cravens, 178 U. S. 389, 396, 20 Sup. Ct. 962, 44 L. Ed. 1116; Diamond Glue Co. v. United States Glue Co. (C. C.) 103 Fed. 838; Williams v. Gaylord, 42 C. C. A. 401, 102 Fed. 372, 375, affirmed in decision of supreme court (recently decided) 22 Sup. Ct. 798, 46 L. Ed. 1102.

We are of opinion that the constitution and laws of California, as quoted in the statement of facts, apply to the present corporation, and govern and control its business conducted within the state.

It is true that the courts in California cannot control the internal affairs of any foreign corporation. Such matters are to be conducted in pursuance of and in compliance· with the provisions of the charter of the foreign corporation, and the laws of the country where it was created; but in the management and method of its business affairs in California with the citizens and residents thereof, in the sale or disposition or transfer of the shares of stock, it must conform to the laws of California in relation to such matters, and is bound thereby. In the recent case of Williams v. Gaylord, supra, the supreme court of the United States said:

"When a corporation sells or incumbers its property, incurs debts, or gives securities, it does business; and a statute regulating such transactions does not regulate the internal affairs of the corporation. And it is certainly within the power of a state to say what remedies creditors of corporations shall have over property situated within the state. * * * And we have no doubt of the power of the state to so prescribe, not only from its power over the manner of conveyance and the disposition of property situated within the state, but from its power over foreign corporations doing business within the state."

The defendant in error was entitled to have the transfer of the stock made upon the books of the company in her name as executrix of the estate of her deceased husband, under the laws of the state of California, and this right could not be denied to her because the estate was not administered upon at the domicile of the corporation in Great Britain.

The principles applicable to this case are analogous to those which are found in many insurance cases where the doctrine contended for by the insurance corporations was that letters of administration upon the estates of parties insured must be taken out at the domicile of the corporation. In Insurance Co. v. Woodworth, 111 U. S. 138, 144, 4 Sup. Ct. 364, 366, 28 L. Ed. 379, the court said:

"In the growth of this country, and the expansions and ramifications of business, and the free commercial intercourse between the states of the Union, it has come to pass that large numbers of life and fire insurance companies and other corporations, established with the accumulated capital and wealth of the richer parts of the country, seek business and contracts in distant states which open a large and profitable field. The inconveniences and hardships resulting from the necessity on the part of creditors of going to distant places to bring suits on policies and contracts, and from the additional requirement, in case of death, of taking out letters testamentary or of administration at the original domicile of the corporation debtor, in order to sue, has led to the enactment in many states of statutes which enable resident creditors to bring suits there against corporations created by the laws of other states. * * * In view of this legislation and the policy embodied in it, when this corporation, not organized under the laws of Illinois, has, by virtue of those laws, a place of business in Illinois, and a general agent there, and a resident attorney there for the service of process, and can be compelled to pay its debts there by judicial process, and has issued a policy payable on death to an administrator, the corporation must be regarded as having a domicile there, in the sense of the rule that the debt on the policy is assets at its domicile, so as to uphold the grant of letters of administration there."

The averments in the answer constitute no defense to this suit. The judgment of the circuit court is affirmed, with costs.