SHREVE CHAIR COMPANY *v.* MANUFACTURERS' FURNITURE COMPANY.

Opinion delivered May 4, 1925.

1. CORPORATIONS—EFFECT OF DISSOLUTION.—At common law the dissolution of a corporation operated as an abatement of actions pending against it, and judgments thereafter rendered against it were nullities, and that rule applied to a foreign corporation after its dissolution brought about in accordance with the laws of the State which created it.

2. CORPORATIONS—JUDGMENT AGAINST DISSOLVED CORPORATION.— The State in which a judgment is rendered against a foreign corporation may provide by statute for the continuation of the life of such corporation until its assets in such State have been administered, but a judgment rendered after dissolution of the corporation has no extra-territorial effect.

3. ABATEMENT AND REVIVAL—DISSOLUTION OF CORPORATION.—Crawford & Moses' Dig., § 1819 et seq., held not to abrogate the common-law rule as to the abatement of actions pending in foreign jurisdictions against dissolved corporations of this State, nor does comity or the full faith and credit clause require that the validity of a foreign judgment against such corporations be recognized.

4. PLEADING—AMENDMENT—NEW CAUSE OF ACTION.—A judgment obtained by plaintiff against defendant in a foreign State, after commencement of an action in this State, cannot be brought into the case by amendment as an additional cause of action.

5. SALES—BREACH OF CONDITION.—A breach of condition as to the time for delivery of goods ordered absolves the buyer from performance and entitles him to cancel the order, unless the breach was waived.

6. SALES—REVOCATION OF ORDER—EVIDENCE.—The chancellor's finding that the buyer canceled orders before shipment after breach of condition as to time of delivery held not against preponderance of the evidence.

7. PRINCIPAL AND AGENT—AUTHORITY OF AGENT.—Where a buyer was entitled to cancel orders because of seller's breach of condition, notice of cancellation to the seller's authorized sales agent, in charge of seller's business and receiving orders for goods, was binding on the seller, whether the agent had authority to, and did, accept the cancellation or not.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Rogers, Barber & Henry,* for appellant.

*Abner McGehee* and *John F. Clifford,* for appellee.

McCULLOCH, C. J.   Manufacturers' Furniture Company (hereinafter referred to as the old corporation) was a domestic corporation, domiciled at the city of Little Rock and engaged in the mercantile business there.   This corporation was dissolved on November 1, 1922, by voluntary resolution adopted by the majority in value of the holders of stock, as prescribed by statute.   Crawford & Moses' Digest, § 1823.   Prior to the dissolution, this corporation sold all of its assets to a new domestic corporation called The Manufacturers' Furniture Company (hereinafter referred to as the new corporation), composed of the same managing officers and some of the same stockholders as the old corporation.

Appellant is a foreign corporation, and instituted the present action against the old corporation in the Pulaski Circuit Court, on November 1, 1922, to recover the sum of $10,810.58, alleged to be due on account for three carloads of chairs shipped by appellant to the old corporation on March 25, 1920, March 26, 1920, and April 26, 1920, on orders previously given by the old corporation to appellant's salesman. Summons was served on the president of the old corporation on the day the suit was commenced, but there is a controversy as to whether or not the service was before or after the filing with the Secretary of State of the resolution dissolving the corporation. The conclusion we have reached in the case, as will be seen later on, renders it unnecessary to decide the controversy as to when the summons was served. Later the new corporation was brought in as garnishee, and afterwards was treated as a defendant in the action. The president of the old corporation, who was likewise the president of the new one, appeared in behalf of the old corporation, and, without entering appearance, filed a motion to quash the service on the ground that the service was had after the dissolution of the old corporation had been perfected. The circuit court overruled that motion, and both corporations answered. The cause was transferred to the chancery court, and proceeded to a final decree, which was in favor of appellees (both of the corporations), dismissing appellant's complaint for want of equity.

The effort in the litigation against the new corporation is to hold it liable for the debts of the old corporation on various grounds; first, that the new corporation was organized merely as a successor of the old one; next, that there was an agreement, either expressed or implied, that the new corporation should pay the debts of the old one; and finally, that there was a violation of the statute known as the bulk sales law. Appellees defended on the ground that there was no liability on the part of the old corporation, for the reason that the order

for the three carloads of chairs was canceled before shipment, on account of violation of the condition upon which the order was given, and that the shipments were refused on arrival of the cars at destination. It is also denied that the new corporation either expressly or impliedly agreed to pay all the debts of the old corporation, and it was also denied that there was any failure to comply with the terms of the bulk sales law.

In July, 1920, appellant instituted an action in the circuit court of Cook County, Illinois, against the old corporation on the same account which is the basis of the present action, and there was service of summons on Mr. T. B. Jacobs, the president of the corporation, who was at that time visiting in Chicago, according to the undisputed evidence, on private business or pleasure. Judgment was rendered in that case in favor of appellant against the old corporation on December 18, 1922, for the full amount of the account. Appellant then filed, in the present action, a duly authenticated copy of the above-mentioned proceedings in the circuit court of Cook County, Illinois, and pleaded the same as conclusive of its rights to recover against the old corporation. Appellees filed a motion to strike out the record of the Illinois judgment on the ground that, if it was a valid adjudication at all, it was rendered after the institution of the present action. There is a controversy as to whether or not the old corporation authorized entry of its appearance in the Illinois court; but we deem it unnecessary to pass upon that controversy, for the reason that we find that, on other grounds, the judgment is not conclusive of the rights of the parties.

The first question to be considered is the effect of the Illinois judgment. It will be observed, from the recital of facts, that the action was commenced in the Illinois court long before the dissolution of the old corporation, but the judgment was not rendered until after the dissolution of the old corporation in the manner prescribed by the statutes of this State. The rule at common law

was that the dissolution of a corporation operated as abatement of actions pending against it, and judgments thereafter rendered were nullities (*State* v. *Arkansas Cotton Oil Co.*, 116 Ark 74), and that rule applied to a foreign corporation after its dissolution brought about in accordance with the laws of the State which created it. 34 C. J. 1149; 5 Thompson on Corporations, § 6563; *Rodgers* v. *Adriatic Fire Ins. Co.*, 87 Hun (N. Y.) 384, 42 N. E. 515; 2 Morawetz on Private Corporations, 1031; *Marion Phosphate Co.* v. *Perry*, 74 Fed. 425, 33 L. R. A. 252. The State in which the judgment is rendered against a foreign corporation can provide by statute for a continuation of the life of the corporations doing business there until the assets in that State are administered, but a judgment rendered after the dissolution of a corporation has no extraterritorial effect. *Rodgers* v. *Adriatic Fire Ins. Co., supra.*

By operation of the statutes of this State (Crawford & Moses' Digest, § 1819 *et seq.*) the common-law rule is abrogated so as to prevent the abatement of an action against a domestic corporation in the courts of this State. *Des Arc Oil Mill* v. *McLeod*, 141 Ark. 332. The statute does not, however, avert the effect of the dissolution further than to provide against abatement and for the distribution of the assets of the corporation. Therefore the common-law rule as to abatement still applies to actions pending in foreign jurisdictions. We are not required by any rule of comity or by the requirement to give full faith and credit to judicial proceedings of other States to recognize the validity of a judgment rendered in another State against a dissolved corporation of this State. *Rodgers* v. *Adriatic Fire Ins. Co. supra; People* v. *Knickerbocker Life Ins. Co.*, 106 N. Y. 619; *Marion Phosphate Co.* v. *Perry, supra; Sewing Machine Co.* v. *Radcliffe*, 137 U. S. 287.

It follows that the Illinois judgment was a nullity and had no binding force upon the rights of the parties. Even if it had been valid, it could not have have been

brought into this case by amendment as an additional right of action, for the reason that it was not mature at the time of the commencement of this action. *Hornor* v. *Hanks,* 22 Ark. 572.

Appellant's right to recover in this action against either of the appellee corporations depends upon the existence of the alleged debt of the old corporation, and the remaining features of the case may be disposed of in deciding the fact whether or not appellant had a valid claim against the old corporation.

There is a conflict in the testimony upon a vital point in the case, but some of the material facts are undisputed. The orders for the three carloads of chairs which were shipped by appellant to the old corporation were given in July, 1919, by Mr. Jacobs, the president and manager of the corporation, to one of appellant's salesmen. The order was verbal, but subsequent correspondence between the parties was sufficient to take it out of the operation of the statute of frauds. It is claimed by appellees that these orders were given to appellant on condition that they would be filled in time for the succeeding Christmas holiday trade. There is very little, if any, dispute on that point, and the evidence abundantly warrants a finding that the orders were given upon that condition. It is undisputed that the condition was not performed, for the shipments by appellant did not begin until the latter part of March, 1920. There was no waiver of this condition, if, as claimed by appellees, the orders were canceled after the condition was broken. In fact, the breach of the condition on the part of appellant absolved the other party, under well-settled principles of law, from performance, and, unless the breach was waived, the purchaser under the contract had the right to cancel. *Keith* v. *Herschberg,* 48 Ark. 138; *Sunshine Cloak & Suit Co.* v. *Roquette,* L. R. A. 1916, E. 932. There is a conflict in the testimony as to whether or not the old corporation actually canceled the orders before shipment, or whether it acquiesced in the shipments, but we

think that the finding of the chancery court on that issue is not against the preponderance of the evidence. Jacobs testified positively and directly that he met one of appellant's agents in charge of one of its places of business in Chicago in January, 1920, and directed the cancellation of the orders, and that the agent acquiesced in the cancellation, and at the same time accepted an order from the old corporation for a carload of stuff of a different quality. This is denied by appellant's agent, who testified that nothing was said about cancellation of the old order. The cancellation was oral, and no one heard the conversation between the two men, but Marshall, another witness, testified that he was present with Jacobs when the latter claims this conversation took place, and that he did not remember the conversation, or was not close enough to hear it. Hubbell, appellant's agent, testified that Marshall was not present at the time. So there is a slight contradiction of Hubbell's testimony, which is not without some force in determining where the preponderance of the testimony lies.

It is further contended, however, by appellant that Hubbell had no authority to accept a cancellation, and it was therefore ineffectual against appellant. We are of the opinion that the evidence was sufficient to show that Hubbell was clothed with authority in that respect, or at least there is enough to show *prima facie* authority, and this has not been overcome. It appears from the testimony affirmatively that Hubbell was an authorized sales agent of appellant, and was in charge of certain space in Chicago where appellant was publicly exhibiting its manufactured articles. It is not essential to the effectiveness of the cancellation that appellant or its authorized agent should have accepted it, for, as we have already seen, the old corporation had the absolute right at that time to cancel the orders on account of appellant's failure to perform the condition. So it is not a question whether Hubbell had authority to affirmatively accept the cancellation, but whether or not the notice

of cancellation to him was sufficient to bind appellant. We think that the evidence shows that Hubbell at least had authority to receive the notice of cancellation, and that it was his duty to communicate it to his principal. At the time the cancellation was made as claimed by Jacobs, Hubbell was in charge of the business of appellant, and was actually receiving orders for goods, and did at that time accept another order from Jacobs. There having been a cancellation of the order and a refusal thereafter to accept the shipments, it follows that there was no liability on the part of the old corporation, and, there being no liability on that score, none can be asserted against the new corporation on any grounds whatever.

The decree of the chancery court is therefore affirmed.